Ref. Case #

25-cv-03111-JWL

The following is a couple of Exhibits that I think I originally sent with all the other Exhibits in this case, but I was going through my paperwork and could not find the Exhibits

The Exhibits are listed below:

Exhibit D, pg 2
Exhibit F, pg 1
Exhibit F, pg 2
Exhibit F, pg 3
Exhibit F, pg 4
Exhibit J, pg 1
Exhibit K, pg 1

If you have these Exhibits already, then I apologize for the inconvienence. Thank You

Respectfully Sent

Jason Hachmeister
EDCF-108952
P.O. Box 311
El Dorado, KS 67042

Exhibit D, pg 2

been presented to me under oath or affirmation which particularly describes the person, place or means of conveyance to be searched as identified in the caption hereof and such facts have established probable cause to believe that the following described articles have been used in the commission of a crime or are contraband or property which constitutes or may be considered a part of the evidence, fruits or instrumentalities of a crime, to-wit:

Items to be seized:

Any and all digital evidence including but not limited to email, internet searches, written documents, online chat, images

THEREFORE, YOU ARE COMMANDED forthwith to search the person, place, thing, or means of conveyance described above within ninety-six (96) hours of the time and date of the issuance hereof and to seize the things described above to be seized and to hold them to be dealt with according to law. Further you are authorized to search all persons present during the execution of this Search Warrant.



ALL RIGHTS RESERVED

CONFIDENTIAL Exhibit F-1 Case # 21380-11

# TOPEKA POLICE DEPARTMENT SUPPLEMENTAL OFFENSE REPORT

TOPEKA, KANSAS 66603

NCIC AGENCY IDENTIFICATION # KS0890100

268: Status:

270: Disposition/Arrest

279: Victim's Name

280: Offense(s):

281: Date 9/10/11

282: NARRATIVE:

At approximately 1606 hrs on 9/10/11, I CPL J. GREEN, assigned to Unit 447 responded to 3520 SW BELLE AVENUE along with 444B OFC RANDALL BATMAN on a call of an unknown medical. Dispatch had advised that the caller had arrived at the address and had found a patient in a pool of blood. We responded to the scene and upon arrival made contact with JASON HACHMEISTER, W/M, DOB 10/14/74. As we approached the house JASON was standing on the front steps outside the front door and waved us down. He then led us to the front door. Upon entering the residence I observed just inside the living room on the far side of a couch which was running length wise out from the front door a W/F lying face down on the floor of the living room with her arms underneath her appeared to be folded across her chest. There was a large amount of blood smeared around on the floor and there appeared to be a large amount of blood on her upper body and her shoulders and head. Her hair was caked with blood. Upon initial examination I believed that it appeared that she had shot herself in the head and was possibly lying on top of the gun. JASON stated that the subject was his mother. I then got on the radio to dispatch and advised that AMR and FIRE could come in. I also asked them to start the CORONOR and DETECTIVES and advised that I believed that it was possibly a suicide. I then conducted a protective sweep of the residence. The upstairs portion of the residence not finding anyone else there. Upon

Reporting Officer: J Green #328
Typed By: MKS #733 PROCESSED CONFIDENTIAL Copies To: Dets



SEP 13 2011

Exhibit F, pg 2

Case # # 21380-11

## TOPEKA POLICE DEPARTMENT SUPPLEMENTAL OFFENSE REPORT

CONFIDENTIAL

completing that I returned to the room and looked at the body closer. At this point I observed there was what appeared to be a piece of fibrous bailing twine that is commonly used in bailing hay wrapped around her neck and tied in a knot behind her head with a short length of excess hanging down behind her back. I then looked at the ceiling and the doorways in the immediate vicinity and it did not appear that the rope had broken as if she had possibly hanged herself. At that point I attempted to check for a pulse on her courted artery in her neck. Upon touching her neck I could feel that her skin was very cold even through the rubber gloves I was wearing. I also felt that her skin had no elasticity and did not give when I placed pressure on it to find the carotid artery. He neck was so stiff due to rigamortis setting in that I was unable to even located where the artery would have been. At this point the FIRE DEPARTMEN, PERSONNEL from ENGINE 8 arrived on scene. As they began to enter the front door I stopped them. They stopped just inside the front door on a small linoleum area not coming in any further. I then advised them that I believed that she was already deceased and that I only needed AMR. They then exited as AMR was approaching the personnel from AMR UNIT 209. GREG WERNER and GARRETT LADD entered the residence. I directed them to avoid the blood and what appeared to be signs of a struggle on the floor behind the couch and they walked in around through the living room in front of the couch. At this point I took note that the large blood stains on the floor appeared to be in a semi circle from the railing of what appeared to be the basement steps and arching around behind the couch and over a long brass curtain rod with drapes attached that was laying behind the couch to where the body was lying. AMR PERSONNEL then did a quick examination of the body. At that point PARAMEDIC GREG WERNER asked me if it was okay to lift the body and check the front side to be able to properly pronounced. I advised him that it was thinking that he would lift her and set her back down. At that point he did lift her and I noticed as he lifted her that her body was completely stiff, her legs did not flex at all and she turned without any movement and her body remained completely rigid. However instead of lifting her and setting her back down the PARAMEDIC turned her completely over from

Exhibit F, pg 3

Case # # 21380-11

TOPEKA POLICE DEPARTMENT SUPPLEMENTAL OFFENSE REPORT

CONFIDENTIAL

lying face down to lying on her back. I then asked him why he turned her all the way over he stated that he did it because he needed to check for signs of an obvious injury. I then made sure that he would leave her in the position that he left her and not attempt to place her back in the position that he had found her. He stated that he would. Once the body had been turned over I looked again looked at it and observed that above her right eye was a large gash approximately an inch or more in length over her right eyebrow that appeared to be the source of the blood. I also noticed that her face and hands were very stiff from rigamortis and her fingers were bent on her hands and appeared to be clawing at her front possibly her throat or her chest or the piece of twine that had been around her neck. I also noticed a slight discoloration on the front of her legs where it appeared that blood had begun to pool from her lying face down. When the EMT'S had finished examining they exited. I again contacted dispatch and asked for another Unit and some crime scene tape to be brought to the scene. I then instructed OFC BATMAN who had taken JASON HACHMEISTER outside to begin a crime scene log. At that point with everyone out of the residence I conducted a further protective sweep this time checking the basement of the garage. I then went to the front door and exited the residence standing on the front porch just outside the door. In looking back in at the scene with the sunlight shining in the front door from the setting sun at this point I was able to observe what appeared to be 3 footprints walking away from where the body had been lying. I observed that the footprints were very small, smaller than my feet which are a men's size 9. I also noted that it appeared to be the soles of either a dress shoe or a cowboy boot as it was a very smooth, non textured, non treaded sole with a horseshoe shaped heel and a tear drop shaped foot. I also noticed that the placement of the footprints appeared that the person making them would have had a fairly short stride. There were 3 footprints, 1 right footprint, 1 left footprint and a 2nd right print on the carpet but none on the linoleum. I also noticed that on the linoleum there were several small drops of blood but there did not appear to be any sort of pattern or trail to these drops of blood. I also noticed near the railing to the basement stairs in one of the blood stains there appeared to be smeared fingerprints or

[redacted]

Exhibit F, pg 4

Case # # 21380-11

TOPEKA POLICE DEPARTMENT SUPPLEMENTAL OFFENSE REPORT

CONFIDENTIAL

a smeared handprint coming away from it. There was also blood splatter on the wall and the wooden railing posts. The blood splatter seemed to be spread in a circular pattern around a small chip in the paint on the drywall base where the railing had been set. I made not that this chip in the paint was very near to where the blood stains began their arch around behind the couch towards where the body had been placed. Upon arrival of OFC ANGELA WIDENER and SGT MIKE CROSS I assisted in running crime scene tape around the exterior of the house and made sure OFC BATMAN had started a crime scene log. Dispatch then got a hold of me by radio and asked me if I had my pone available so they could transfer the duty DISTRICT ATTORNEY to my phone. I then went to my car and retrieved it. Dispatch transferred a call from on duty DISTRICT ATTORNEY KELLI MCPHERRON. I advised DA MCPHERRON as to what we had. She stated that she would be en route. I then stood by at the scene with OFC BATMAN. DET ARENDORF arrived and I led him to the door and briefed him on what we had found and let him go inside to begin the initial DETECTIVES investigation. Later DA MCPHERRON and CHERYL HOLZ from the CORONERS OFFICE arrived and I again spoke with them as to what we were doing advising them that DET ARENSDORF was going to return to the station and begin obtaining a search warrant, that the HOMICIDE DETCTIVES had been contacted and that I had also radioed for CSI to process the scene. I then spoke with JASON HACHMIESTER and OFC BATMAN and was advised that the female inside was JASON'S mother, SHEILA HACHMEISTER, W/F, DOB 4/17/53. JASON was then transported to TOPEKA POLICE HEADQUARTERS by OFC WIDENER. While waiting for DETECTIVES and CRIME SCENE OFC BATMAN and I spoke with some of the neighbors in the area. I stood by at the scene while OFC BATMAN spoke with most of the adjacent neighbors however at one point I did return to my vehicle while OFC BATMAN stood at the scene in order to get my vehicle moved back to the driveway of the case address. In while going to my vehicle I spoke with JAMEY KOHKE, W/M, that lived at 3512 SW BELLE just 2 doors to the north. MR. KOHKE advised that he had been gone all day at an auction and had only returned as I was walking to my car. I then returned to the scene

Reporting Officer: J Green #328
Typed By: MKS #733 9/11/2011

Date: 9/11/2011
Copies To: Dets

Exhibit J, pg 1

Law Office of Joseph A. Desch
*Joseph A. Desch, Attorney*
201 SW Greenwood Avenue
Topeka, KS 66606-1227
Office Phone (785) 232-7003
Hours: Monday-Friday 9am-4pm

Friday June 14, 2019

Jason Hachmeister #108952
Ellsworth Correctional Facility
P.O. Box 107
Ellsworth, KS 67439

RE: SNCO 11CR2178 / COA114796

LEGAL MAIL

Jason,

In response to your letter postmarked June 11, 2019 - at the time of your case listed above, all affidavits to search warrants were sealed, and not attached to the warrant.

Updates will be forwarded via USPS mail.

Please use the information above to forward written correspondence via USPS mail or to schedule attorney/client telephone appointments.

Sincerely,

Joseph A Desch

*Joseph A. Desch, Attorney*
Law Office of Joseph A. Desch

[redacted]

Exhibit K pg 1

Jason,
Yes all search
Warrant Affidavits are
Sealed when filed with
Clerks office
-KJr

FILED BY CLERK
KS. DISTRICT COURT
THIRD JUDICIAL DIST.
TOPEKA, KS

2019 AUG 26 A 9 48

Clerk of the Court
Shawnee County Courthouse
200 S.E. 7th, Suite 209

Ref : Case # 18 -CV-129 (the Motion to Reconsider the denial of the 60-1507)

1. I would like to get an R.O.A., because I have not heard anything about the status of the Motion to Reconsider since January.

2. Also, I wondering if you could tell me if the Affidavit for the Sept. 12, 2011 Warrant for the Gateway Computer (case # 12-CR-471, or case # 11-CR-2178) was sealed and attached to the Warrant. I know multiple Affidavits from 11-CR-2178 were sealed and not attached to the Warrants (see the included letter from my attorney about the issue), but that attorney is not the attorney for 12-CR-471 and he did not know about the Affidavit Sept 12, 2011 Gateway. James Chappas told me he did not know and would look into it, but he was not gotten back to me.

Thank You

Sincerely

Jason Hachmeister
#108952 - ECF
P.O. Box 107
Ellsworth, KS 67439

August 21, 2019