Exhibit 1, Page 1

ELECTRONICALLY FILED
2018 Dec 31 AM 11:13
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2012-CR-000471

**Court:** Shawnee County District Court

**Case Number:** 2012-CR-000471

**Case Title:** State of Kansas vs. Jason W Hachmeister

**Type:** Memorandum Decision and Order re 60-1507

SO ORDERED.

/s/ Honorable Evelyn Wilson, District Judge

Exhibit 1, Page 2

## STATEMENT OF UNCONTROVERTED FACTS

1. Petitioner was charged with and found guilty of first degree murder by a jury on February 3, 2015.[3]
2. While officers were executing a search warrant of his residence and home computer in the murder case, child pornography was found.[4]
3. Officers immediately terminated the search pursuant to the warrant and obtained another search warrant, specifically authorizing the search for and seizure of child pornography.
4. On March 19, 2012, Petitioner was charged with 108 counts of child pornography.[5]
5. On March 20, 2012, Richard Lake was appointed to represent Petitioner. Mr. Lake was permitted to withdraw on June 28, 2012.[6]
6. Also on June 28, 2012, Napoleon Crews was appointed to represent Petitioner. Nearly one year later, June 12, 2013, Mr. Crews was permitted to withdraw.[7]
7. On June 12, 2013, James Chappas was appointed to represent Petitioner. Mr. Chappas represented Petitioner during the jury trial. Two days later, December 11, 2013, Petitioner advised the court that he wished to "fire" Mr. Chappas and represent himself.
8. The court denied both requests.[8]
9. Thereafter, three Motions to Suppress Illegally Seized Evidence were filed in the pornography case; after hearings, the Motions were denied.[9]

---

[3] *State v Hachmeister*, 2011-CR-002178.
[4] A total of five search warrants were issued in the murder investigation, 306 Kan at 631.
[5] *State v Hachmeister,*306 Kan. 630; 395 P.3rd 833 (2017).
[6] Docket entries, 2012-CR-000417.
[7] Docket entries, 2012-CR-000417.
[8] Docket entries, 2012-CR-000417.
[9] Motions ## 6 (Crews); 19 (pro se); 32 (Chappas).

Exhibit 1, Page 3

10. Petitioner was found guilty of 105 counts of sexual exploitation of a child. On February 7, 2014, Petitioner was sentenced to 105 counts of child pornography.[10]

11. On June 16, 2017, the Supreme Court ordered that the District Court's decision be affirmed.[11]

12. On January 19, 2018, Petitioner filed a 153 page "Petition for Injunctive Relief and Writ of Habeas Corpus pursuant to K.S.A. 60-1501 & 60-1507."

**STANDARD OF REVIEW**

The court reviews a request for habeas corpus relief based upon the statutory criteria. Specifically, a defendant seeking habeas corpus relief must show that (1) judgment was rendered without jurisdiction, (2) the sentence imposed was not authorized by law or is open to collateral attack, or that (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 60-1507(b).

An evidentiary hearing is not automatic. "A movant has the burden to prove his or her K.S.A. 60–1507 motion warrants an evidentiary hearing. The movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." *Swenson v. State*, 284 Kan. 931, 938, 169 P.3d 298 (2007). Summary dismissal of a petition for relief under K.S.A. 60-1507(b) is appropriate when the motion, files, and record in the case "conclusively show that the prisoner is entitled to no relief." K.S.A. 60-1507(b); *Fischer v. State*, 296 Kan. 808, 822–23, 295 P.3d 560 (2013). Moreover, a court is not required to entertain successive motions from the same prisoner for similar relief. K.S.A. 60-1507(c).

---

[10] 306 Kan at 631.
[11] 306 Kan at 640.

Exhibit 1, Page 4

Additionally, a petition filed pursuant to K.S.A. 60-1507 must be timely, meaning it must be filed within one year of "[t]he final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction." K.S.A. 60-1507(f)(1)(A). Petitioner's request for habeas corpus relief is timely.

**CONCLUSIONS OF LAW**

Petitioner claims such a denial of his constitutional rights as to render the judgment in the pornography case vulnerable to collateral attack. The court does not agree. Petitioner raises multiple arguments in his 153-page petition that fall into two categories: (1) the child pornography discovered pursuant to the search warrants should have been suppressed; and (2) trial counsel was ineffective. Petitioner makes only conclusory contentions and fails to state an evidentiary basis in support of his claims. Further, Petitioner fails to identify an evidentiary basis for relief from the record.

First, Petitioner argues that the officers were only authorized to conduct computer searches for terms related to the murder investigation. Thus, Petitioner argues there is no plausible explanation for the officers' discovery of child pornography. Once the child pornography was discovered, the officers immediately stopped their search and sought another search warrant specific to the pornography. The officers then resumed their search pursuant to this final search warrant.

In order to successfully attack the "alleged unlawfully seized" child pornography, Petitioner must argue that the affidavits and search warrants were facially invalid. This argument must be made at a hearing under *Franks v. Delaware,* 438 U.S. 154, 57 L.Ed 2d 667, 98 S.Ct. 2674 (1978). In addition, the defendant must show by sworn testimony that the application for a search warrant contained material statements of deliberate falsehood or of reckless disregard for

Exhibit 1, page 5

the truth which were necessary to the finding of probable cause. *State v. Hendricks*, 31 Kan. App. 2d 138, 61 P.3d 722 (2003) quoting *Franks v. Delaware*, 438 U.S. 154, 57 L.Ed 2d 667, 98 S.Ct. 2674 (1978). In the present case, Petitioner failed to raise the issue and failed to request a *Franks* hearing.[12] While the Petitioner need not specifically request a *Franks* hearing, there must be a deliberate showing of the necessity for the hearing. *State v. Bowen*, 27 Kan. App. 2d 122, 131-132, 999 P.2d 286 (2000).[13] Petitioner has failed to show such necessity.

Additionally, Petitioner concedes that the officers stopped their search and obtained a new search warrant based on the information found on the computer. The officers state it was evident that what they found on the computer was child pornography. Here, everything the officers did was lawful and procedurally correct. As the Kansas Supreme Court noted in *Hachmeister*, 306 Kan. at 638: "[W]arrants and their supporting affidavits are interpreted in a commonsense rather than a hyper-technical fashion so as not to discourage police officers from submitting their evidence to a judicial officer before acting." *State v. Ames,* 222 Kan. 88, Syl. ¶ 2, 563 P.2d 1034 (1977). Search warrants and their supporting affidavits are presumed valid, and one attacking their validity carries the burden of persuasion. *Ames,* 222 Kan. 88, Syl. ¶ 2." Thus, even if Petitioner had properly raised this issue at a *Franks* hearing, he had no evidence to offer in support of his position. Petitioner does not claim that there were statements of deliberate falsehood or reckless disregard of the truth. The fact that the trial court denied the Motions to Suppress does not mean that the attorneys were ineffective in their representation.

Moreover, even if this Court determines that probable cause had not existed to issue the search warrant, the good faith exception saves the warrant. "The good faith exception saves a

[12] The court has reviewed the motions to suppress and the attorneys involved had no basis upon which to make a *Franks* argument.
[13] Here, the motion to suppress was a sufficient showing for a *Franks* hearing.

Exhibit 1, Page 6

no reasonable officer could believe that a warrant (Exhibit D) that did not mention any crime in the warrant, and allowed the search and seizure of "evidence, fruits or instrumentalies of a crime" for "any and all" evidence was lawful or valid

warrant ultimately found to be unsupported by probable ~~cause but believed~~ by the executing officers to be valid." *State v. Weas*, 26 Kan. App. 2d 598, 604, 992 P.2d 221 (1999), *rev. denied* 268 Kan. 895 (2000); *State v. Close*, Kan. App. Unpub. (2006). Here, officers found child pornography. This finding supported probable cause for a search warrant.

Second, Petitioner argues that his appointed attorneys, James Chappas and Napoleon Crews, were ineffective. He also asserts that the appellate attorney failed to raise the issue of ineffective trial counsel on direct appeal and failed to argue prosecutorial misconduct. Petitioner has the burden to prove his claim of ineffective assistance of counsel.

Petitioner fails to offer an evidentiary basis to support his claims. He must submit more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record." *Swenson v. State*, 284 Kan. 931, 938, 169 P.3d 298 (2007). He has the burden of proving that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Chamberlain v. State*, 236 Kan. 650, 694 P.2d 468 (1985). This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Chamberlain*, 236 Kan. at 650.

The *Chamberlin* case provides a comprehensive discussion about the legal analysis applicable to a claim of ineffective assistance of counsel in a criminal case and that discussion will not be repeated here. Long standing case law establishes that Petitioner must overcome a presumption that counsel's assistance was reasonable. There must be a reasonable probability that the decisions challenged would have been different had Petitioner received effective assistance of counsel. "Reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome." 236 Kan. at 654-655. Suffice it to say that the advocacy

Exhibit 1, Page 7

and legal services of the attorneys representing Petitioner at trial and on appeal did not fall below an objective standard of reasonableness.

Here, Petitioner merely makes conclusory allegations and does not state an evidentiary basis to support his claims. The court's comprehensive review of the Petition, files, and records demonstrate that Petitioner was represented by multiple competent attorneys, including appellate counsel. His claim of ineffective assistance of counsel is without merit.

## CONCLUSION

After a review of the Petition and the files and records in this case, the Court DENIES Petitioner's Writ of Habeas Corpus. This Memorandum Decision and Order shall constitute the Court's entry of judgment when filed with the Clerk of this Court. No further journal entry is required.

**This Order is effective on the date and time shown on the electronic file stamp.**

Exhibit 1, Page 8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing **MEMORANDUM DECISION AND ORDER** was electronically sent to:

Gerald Wells
*Appellate Counsel for Defendant*

and a copy was mailed, hand delivered, or placed in the pick-up bin on or about the date of filing to the following:

Jason Hachmeister, #108952
ECF
PO Box 107
Ellsworth, KS 67439
*Defendant*

and

Michael Kagay
Shawnee County District Attorney
Courthouse
*Attorney for Plaintiff, State of Kansas*

Louann Davis
Administrative Assistant

Exhibit 2, Page 1

# Public Case Summary

Case No. 2018-CV-000129

01/25/2019 Letter - Correspondence

*Letter from Jason Hachmeister to Clerk regarding Motion to Reconsider and Transcript Costs ***Copy sent to Div 5 Court Reporter 1/28/2019****

01/25/2019 Letter - Correspondence

*Letter from Jason Hachmeister to Clerk regarding Motion to Reconsider*

01/25/2019 Motion

*Motion to Reconsider*

02/08/2019 Letter - Correspondence

*Letter from Jason Hachmeister to Clerk regarding Caselaw, Motion to Reconsider and Case*

03/21/2019 ORD: Order Originated by Judge

*Memorandum Decision and Order. EZW ORD: Order Originated by Judge*

03/21/2019 Terminated Statistically

*Civil Case Termination*
*Termination Date: 3/21/2019*
*Termination Type: Settled w/ Judicial Conf or Hearing*

03/21/2019 Termination Information

*Termination Information*

08/26/2019 Letter - Correspondence

*Letter from Jason Hachmeister to clerk regarding copy of ROA and questions about affidavits on criminal cases. Copy to Division 5 and Criminal Department. ROA mailed 8/27/19.*

06/22/2020 Letter - Correspondence

*Letter from Jason Hachmeister to Clerk Regarding Ruling on Case; Sent Copy of Memorandum Decision and Order along with Copy of the Termination Information Sheet 06/23/2020*

02/22/2021 Letter - Correspondence

*Letter from Jason Hachmeister #108952 to Clerk of the Court Filed. Regarding a Copy of the ROA and Questions about a Notice of Appeal. Mr Hachmeister Mailed a Notice of Appeal to the Court in July 2020. The Court has not Received a Notice of Appeal on this Case. (ROA Mailed to Mr Hachmeister 02/24/21)*

02/24/2021 Letter - Correspondence

*Memo from Clerk to Jason Hachmeister Regarding ROA and Question about Notice of Appeal (Not Received)*

04/05/2021 Notice Of Appeal

*2nd Notice of Appeal filed by Jason Hachmeister Pro se on Behalf of Jason Hachmeister to the Kansas Court of Appeals.*

04/09/2021 MOT: Motion (Generic)

*Motion to Dismiss Appeal MOT: Motion (Generic)*

04/13/2021 Judge: Administrative Reassign

*Judge: Administrative Reassign- Assigned to Judge Anderson per Judge Anderson*

04/29/2021 Letter - Correspondence

*Letter to Clerk from Jason Hachmeister Requesting Copy of the Denial for 60-1507; Copy mailed 05/04/2021*

05/05/2021 Memorandum

*Response to State's Motion to Dismiss Appeal*

05/14/2021 ORD: Order Originated by Judge

Exhibit 2, Page 2

# Public Case Summary

Case No. 2018-CV-000129

| | |
|---|---|
| | *Memorandum Decision and Order RDA ORD: Order Originated by Judge* |
| 05/14/2021 | Letter - Correspondence<br>*Letter from plaintiff to clerk requesting another copy of the Memorandum Decision and Order (Sent copies from CR and CV caswes)* |
| 10/07/2021 | Letter - Correspondence<br>*Letter from Jason Hachmeister Request Copies* |
| 09/11/2023 | MOT: Motion (Generic)<br>*Motion for Findings of Facts and Conclusions of Law on All Issues Raised in 18-CV-129* |
| 11/07/2024 | INF: Information (Generic)<br>*Letter filed by Jason Hachmeister requesting copies.* |
| 05/12/2025 | INF: Correspondence<br>*Letter from Jason Hachmeister requesting copies. Copy of Motion for 60-1507, Petition for Injunctive Relief and Case Summary sent back.* |

| DATE | FINANCIAL INFORMATION | | | |
|---|---|---|---|---|
| | **Plaintiff** Hachmeister, Jason | | | |
| | Total Charges | | | $3.00 |
| | Total Payments & Credits | | | ($3.00) |
| | **Balance Due as of 5/13/2025** | | | **$0.00** |
| 2/15/2018 | Charge | | Hachmeister, Jason | $3.00 |
| 3/6/2018 | Escrow Adjustment | | Hachmeister, Jason | $0.00 |
| 3/6/2018 | Payment | Receipt # 328335 | Hachmeister, Jason | ($3.00) |

Date: 8/27/2019 **Shawnee County District Court** User: SNPETIMM
Time: 11:08 AM ROA Report
Page 1 of 1 Exhibit #2 Case: 2018-CV-000129
Current Judge: Evelyn Wilson

Jason Wayne Hachmeister #108952 vs. State of Kansas

60-1507

| Date | | Judge |
|---|---|---|
| 1/19/2018 | Letter from Jason Hachmeister to Clerk regarding 60-1507 Motion | Evelyn Wilson |
| | Inmate Account Statement | Evelyn Wilson |
| | Motion for 60-1507, Poverty Affidavit Included (Copy sent to Division 5 and DA) | Evelyn Wilson |
| | Petiton for Injunctive Relief and Writ of Habeas Corpus pursuant to K.S.A. 60-1501 & 60-1507 | Evelyn Wilson |
| 1/22/2018 | Memo from Clerk to Jason Hachmeister regarding Case | Evelyn Wilson |
| 2/14/2018 | Letter from Jason Hachmeister to Clerk regarding Filing of Case | Evelyn Wilson |
| 2/15/2018 | Letter from Clerk to Jason Hachmeister regarding Filing of Case | Evelyn Wilson |
| | Ledger for Filing Fee sent to Kansas Department of Corrections, Copy sent to Jason Hachmeister | Evelyn Wilson |
| 1/18/2019 | Letter from Jason Hachmeister to Clerk to regarding Denial of 60-1507, Order and Pro Se Motion ***Copy of Letter sent to Div 5*** | Evelyn Wilson |
| 1/25/2019 | Letter from Jason Hachmeister to Clerk regarding Motion to Reconsider and Transcript Costs ***Copy sent to Div 5 Court Reporter 1/28/2019*** | Evelyn Wilson |
| | Letter from Jason Hachmeister to Clerk regarding Motion to Reconsider | Evelyn Wilson |
| | Motion to Reconsider | Evelyn Wilson |
| 2/8/2019 | Letter from Jason Hachmeister to Clerk regarding Caselaw, Motion to Reconsider and Case | Evelyn Wilson |
| 3/21/2019 | Memorandum Decision and Order. EZW ORD: Order Originated by Judge | Evelyn Wilson |
| | Civil Case Termination<br>Termination Date: 3/21/2019<br>Termination Type: Settled w/ Judicial Conf or Hearing | Evelyn Wilson |
| | Termination Information | Evelyn Wilson |
| 8/26/2019 | Letter from Jason Hachmeister to clerk regarding copy of ROA and questions about affidavits on criminal cases. Copy to Division 5 and Criminal Department. ROA mailed 8/27/19. | Evelyn Wilson |

Exhibit 3

Ref. Case #

25-cv-03111-JWL

The following pages are a discussion/exhibit about how the district court did not issue a final decision that disposed of all issues on the merits, meaning its order did not end the cause of action, and was not a final, appealable order. As a result, my 2254 is timely.

Jason Hachmeister
EDCF-108952
P.O. Box 311
El Dorado, Ks 67042

Exhibit 3, Page 1

Exhibit For Case # 25-cv-03111-JWL

For Motion Regarding Timeliness And Exhaustion

In this Exhibit I will discuss in more detail the fact that the district court did not issue a final decision that disposed of all issues on the merits, meaning its order (Exhibit X) did not end the cause of action, and was not a final, appealable order. Also, because the order adjudicated fewer than all the claims raised, and did not contain an express determination that there was no just reason for delay and did not contain a 60-254(b) certification, its' decision is not a final, appealable order.

Until the district court issues an order adjudicating all the claims, the action continues

Fourth Amendment Claims

Each Fourth Amendment claim is seperate and entirely different from the other Fourth Amendment claims, and each Fourth Amendment claim has to be examined on its own, with findings of facts and conclusions of law for each individual Fourth Amendment claim. Each Fourth Amendment claim is seperate and distinct from each other.

In Exhibit W (Memorandum In Support of 60-1507 paperwork) I clearly laid out multiple Fourth Amendment claims that are different from the others (including different Federal cases for each Fourth Amendment claim), and I clearly said my attorneys were ineffective for not

②

Exhibit 3, Page 2

filing a Motion To Suppress for each Fourth Amendment claim

→ #1 In Exhibit W (Page 5-17) I argued the search warrants did not mention a crime anywhere in the warrants, and the warrants authorized the search and seizure of 'evidence, fruits or instrumentalities of a crime,' meaning any crime. These same issues were also raised in Exhibit U Pages 4-5 (1a) and Pages 8-9 (1e). I also argued my attorneys were ineffective for not filing Motion To Suppress on each of the issues

→ #2 In Exhibit W (Page 18-23) I argued Det. Gifford performed an illegal search (pursuant to Exhibit D which was a general warrant with no limits) and Det. Gifford could not explain how he found it, saying "I'm not sure I can explain that without saying something shouldn't." I also argued my attorneys were ineffective for not filing Motion To Suppress on this issue. I also argued this same issue in Exhibit U Page 7 (1c)

→ #3 In Exhibit W (Page 27-32) I argued my Gateway laptop was illegally seized after they illegally searched my zippered-shut leather shoulder bag in which the Gateway laptop was located. This same issue was raised in Exhibit U Page 5-6 (1b). I also argued ineffective assistance for my attorneys not filing a Motion To Suppress based on this issue.

→ #4 In Exhibit W (Page 36-37) I argued ineffective assistance of counsel where my attorney, Napoleon Crews, challenged the wrong warrant that was not even for the right computer (it was for a Lenovo), even though I repeatedly told him it was not the right warrant. I also argued this same issue in Exhibit U Page 8 (1d)

Exhibit 3, Page 3

## Brady Violation Claim

→ In Exhibit W (Page 41-46) I argued a Brady violation by the State not giving my attorneys (or myself) material evidence (the search warrants used to seize and then search my Gateway laptop - Exhibits B and D) which is the reason why my attorney were not able to timely file a Motion To Suppress for the correct warrants and ensuing search of Gateway. Both of the warrants (and their affidavits) were intentionally withheld by the State in order to get a tactical advantage. I also raised this issue in Exhibit U Page 9-12 (Section 2)

## Self-Representation And Chappas' Conflict Of Interest

→ In Exhibit W (Page 48-51) I argued I was denied to right to represent myself, and that my attorney James Chappas had a conflict of interest when he directly argued against my motion to fire him and represent myself. I also raised this issue in Exhibit U Page 12-16 (Section 3). So the district made me (who it concluded was incompetent) argue my own motion to represent myself.

In its order (Exhibit X) the district court says my petition fell into 2 categories (1) evidence discovered pursuant to search warrants should have been suppressed; and (2) trial counsel was ineffective. Just looking at Exhibit W shows I clearly argued more than that, as the 2 claims on this page attest to (Brady violation, Self-Representation and Conflict of Interest). Furthermore, the district court says things that I simply did not say

→ (1) The order says I argued officers were only

authorized to search for terms related to the murder investigation. This is false.

At no point did I say officers were only authorized to search for terms related to the murder investigation. I clearly said the warrants did not mention any crime, and that warrants authorized the search and seizure of 'evidence, fruits or instrumentalities of a crime,' meaning any crime (i.e., it was a general warrant)

At no point did I concede officers stopped their search and obtained a new warrant based on the information found on the Gateway laptop. I said that only after TPD searched pursuant to a warrant that had zero limitations (and whose Affidavits were not incorporated into, not attached to, and were sealed - see Exhibits J and K), and only then, did they ask for a search warrant in Jan. 2012. Also, if you look at the top of Exhibit D (the Gateway laptop warrant) you will see that Det. Gifford wrote "seized pictures + internet searches." So if, as Det. Gifford himself wrote, the Gateway laptop warrant (Exhibit D) was used to "seize[] pictures + internet searches," this means he "seized pictures + internet searches" before obtaining the search warrant in Jan. 2012, and that warrant (Jan. 2012) was only used to try and justify the pictures and internet searches that Exhibit D shows were already seized. Furthermore, Det Gifford was asked how he supposedly found those things when he was only supposed to be looking for homicide/murder terms (using a filter) and Det Gifford said "I'm not sure I can explain that without saying something I shouldn't." (see Exhibit R)

→ (2) This was not one Fourth Amendment claim lumped together. I clearly argued multiple Fourth Amendment claims that are separate and entirely different from the other Fourth Amendment claims, and each Fourth Amendment claim has to be

Exhibit 3, Page 5



examined on its own, with findings of facts and conclusions of law for each individual Fourth Amendment claim. I also argued my attorneys were ineffective for not arguing each individual Fourth Amendment claim. I did not just argue the clear unconstitutionality of the search warrants. I argued (1) the search warrants did not mention any crime at all, that (2) the search warrants authorized the search and seizure for 'evidence, fruits or instrumentalities of a crime,' meaning any crime, and that the Gateway laptop warrant (Exhibit D) had language that said that "any and all digital evidence including but not limited to..." could be seized, that (3) Gifford performed an illegal search and when asked how he "found" evidence he said "I'm not sure I can explain that without saying something I shouldn't", I argued (4) my computer was illegally seized because police illegally searched my zippered-shut leather shoulder bag which is where the Gateway laptop was seized from. I argued my attorneys were ineffective for not arguing and filing a Motion To Suppress for each individual Fourth Amendment claim. I also argued my attorneys were ineffective for challenging the wrong warrant, even though I repeatedly told them they did not have the correct warrant (Exhibit B and D) yet.

→ (3) I clearly argued a Brady violation by the State when they purposefully withheld material evidence necessary to properly argue the suppression issue (Exhibits B and D - the search warrant used to seize and then search the Gateway laptop), even after multiple requests by myself and by my attorneys.

→ (4) I clearly argued I was denied the right to represent myself, and I had a conflict of interest with Chappas when he directly argued against my motion to fire him and represent myself.

Exhibit 3, Page 6



At no point in its order did the court address the fact that the warrants did not specify any crime at all. At no point in its order did the court address the fact that the warrants (Exhibits B and D) authorized the search and seizure of 'evidence, fruits or instrumentalities of a crime,' meaning any crime, and that Exhibit D was for "any and all digital evidence including but not limited to...." The affidavits were not incorporated into, not attached to the warrants (see Exhibits J and K), but rather the affidavits were sealed and cannot be used to cure the facial invalidity of the warrants.

Instead the court referenced Franks v. Delaware. Franks has nothing to do with general warrants. It does not matter if there is probable cause (which was obtained with unconstitutional searches and seizures, and any mention of these unconstitutional searches and seizures was materially omitted when present in the affidavits). The warrants (whose affidavits were sealed, not incorporated into, and not attached to - see Exhibits J and K) were still general warrants.

Franks has nothing to do with warrants that do not specify a crime. Franks has nothing to do with warrants that allow the search and seizure of 'evidence, fruits or instrumentalities of a crime,' meaning any crime, and whose affidavits are sealed, not incorporated into, and not attached to the warrants. By not referencing any particular crime, and by authorizing the search and seizure of 'evidence, fruits or instrumentalities of a crime,' meaning any crime, the warrants were so facially overbroad that no objectively reasonable officer could rely on them.

In fact, Cassady v. Goering, 567 F.3d 628, Footnote 10 (10th Cir. 2009) said "If the warrant had listed all the items possibly subject to search and seizure under the catchall phrase, the 162-word description of narcotics and associated contraband would seem "minor" in comparision." My case is

Exhibit 3, Page 7

the same thing. The items subject to search and seizure were under the catchall phrase "evidence, fruits or instrumentalities of a crime," meaning any crime. Lastly, the Gateway laptop warrant (Exhibit D) was for "any and all digital evidence including but not limited to...."

At no point did Judge Wilson address the fact that Det. Gifford performed an illegal search, and that when asked how he "found" evidence he said "I'm not sure I can explain that without saying something I shouldn't." (Exhibit R). *Franks* has nothing to do with Gifford's illegal search, and his inability to explain how he "found" evidence.

At no point did Judge Wilson address the fact that my Gateway laptop was illegally seized after TPD illegally searched my zippered-shut leather bag without a warrant. *Franks* has nothing to do with the illegal opening of my zippered-shut leather shoulder bag, or the subsequent seizure of the Gateway laptop, or the subsequent search of the Gateway laptop.

At no point did the court address the fact that my attorneys did not preserve the actual warrants involved (Exhibits B and D), but instead argued the wrong warrant (where a Lenovo, not the Gateway laptop, was seized) after I repeatedly told them we had not gotten the correct warrants yet.

At no point did the court address the *Brady* violation argument where the State deliberately withheld material warrants (Exhibits B and D) even after numerous requests from myself and my attorneys.

At no point did the court address the fact that I argued I was denied the right to represent myself, and that I had a conflict of interest with my attorney James Chappas when he directly argued against my motion to fire him and represent myself.

Also, because the district court raised the *Franks* issue

(8)

Exhibit 3, Page 8

in its non-final, unappealable order, that then is why I addressed it in my 2254 where I discussed probable cause, and the fact the affidavit contained information from the unconstitutional searches and seizures, and the affiant materially omitted how the information in the affidavits was obtained. The district court's non-final, unappealable order opened the door on this issue.

Because the district court has not addressed each specific Fourth Amendment claim, much less make findings of facts and conclusions of law on each specific Fourth Amendment claim (even after I have asked them to do multiple times now), or my attorney's ineffectiveness on each of the specific Fourth Amendment claims, its order is non-final, and therefore unappealable.

Because the district court has totally failed to even attempt to address my Brady violation claim, nor made findings of facts and conclusions of law on the Brady violation, its order is non-final, and therefore unappealable.

Because the district court has not addressed my right to self-representation, and my attorneys conflict of interest when he (Chappas) directly argued against my motion to fire him and represent myself, its order is non-final, and therefore unappealable.

Because the district court did not issue a final decision that disposed of all issues on the merits, its order did not end the cause of action, and was not a final, appealable order. Also, because the order adjudicated fewer than all the claims raised, and did not contain an express determination that there was no just reason for delay and did not contain a 60-254(b) certification, it is not a final, appealable order.

Until the district court issues an order adjudicating

Exhibit 3, Page 9



all the claims, the action continues and the district court retains jurisdiction to revise its prior order. So far the district court has refused to do so for multiple years now.

At no point was I ever told that the Memorandum sent on Dec. 31, 2018 was filed by mistake. This was not known by me until 2021 (5/18/2021) when I was sent an ROA (see the included exhibit sent with this motion - Exhibit #1), I have sent another exhibit (Exhibit #2) that shows on 1/18/2019 I wrote to the district court regarding "Denial of 60-1507," this was because of what I was sent on 12/31/2018 (Exhibit #1). This Memorandum from 12/31/2018 was pretty much, if not totally, verbatim of the Memorandum that was from 3/21/2019, which I did not receive until I wrote to the district court on 8/26/2019 asking for an ROA because I had not heard anything about the status of the Motion To Reconsider. This is shown at Exhibit K, #1 of the Exhibits originally sent in support of this 2254 petition.

Exhibit #2, on 1/25/2019 shows my Motion To Reconsider where I told the district court they did not address all issues (in the Memorandum I was sent "by mistake"), and which they did not address in the Memorandum from 3/21/2019, nor have they addressed at any time, even after multiple requests to do so.

Respectfully Sent

Jason Hachmeister

EDCF - 108952
P.O. Box 311
El Dorado, KS 67042

Date: 5/18/2021

Time: 09:01 AM

Page 1 of 1

**Shawnee County District Court**

ROA Report

User: SNPETIMM

Exhibit #4

Case: 2012-CR-000471 Current Judge: Richard Anderson

Defendant: Hachmeister, Jason W

State of Kansas vs. Jason W Hachmeister

Felony

| Date | Selected Items | Judge |
|---|---|---|
| 3/20/2019 | Judge's Minutes. The Memorandum Decision and Order [re 60-1507], filed in this case on 12/31/2018, was filed in this case by mistake. It should be disregarded. EZW. | No Judge Assigned |

Exhibit 5, Page 1

# IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,861 ← The other Case # was Case # 127,860

JASON HACHMEISTER,
*Petitioner,*

v.

JUDGE RACHEL PICKERING of the Shawnee County District Court;
STATE OF KANSAS,
*Respondents.*

## ORDER

The court denies Petitioner's petition for writ of mandamus and the addendums thereto for failure to state a claim for relief that lies in mandamus. See *Schwab v. Klapper*, 505 P.3d 345, 349 (2022) (recognizing that a writ of mandamus "will not ordinarily issue unless there has been a wrongful performance or actual default of duty" and that "mandamus relief does not lie if there is an adequate remedy at law").

The court notes Robert Hutchison's entry of appearance for Respondents.

Dated this 3rd day of October 2024.

FOR THE COURT

Marla Luckert

MARLA LUCKERT
Chief Justice

Exhibit K pg 1

Jason,
Yes all search Warrant Affidavits are sealed when filed with Clerks office
- KJ

FILED BY CLERK
KS. DISTRICT COURT
THIRD JUDICIAL DIST.
TOPEKA, KS

2019 AUG 26 A 9 48

Clerk of the Court
Shawnee County Courthouse
200 S.E. 7th, Suite 209

Ref : Case # 18 -CV-129 (the Motion to Reconsider the denial of the 60-1507)

1. I would like to get an R.O.A., because I have not heard anything about the status of the Motion to Reconsider since January.

2. Also, I wondering if you could tell me if the Affidavit for the Sept. 12, 2011 Warrant for the Gateway Computer (case # 12-CR-471, or case # 11-CR-2178) was sealed and attached to the Warrant. I know multiple Affidavits from 11-CR-2178 were sealed and not attached to the Warrants (see the included letter from my attorney about the issue), but that attorney is not the attorney for 12-CR-471 and he did not know about the Affidavit Sept 12, 2011 Gateway. James Chappas told me he did not know and would look into it, but he was not gotten back to me.

Thank You

Sincerely

Jason Hachmeister
#108952 - ECF
P.O. Box 107
Ellsworth, KS 67439

August 21, 2019

**Jerry Wells**
**ATTORNEY-AT-LAW**

**P. O. Box 641**
**Lawrence, Kansas 66044**

**Phone: 785-856-3925**
**Facsimile: 785-856-1583**

June 10, 2021

Mr. Jason W. Hachmeister, #108952
Ellsworth Correctional Facility
P. O. Box 107
Ellsworth, KS 67439

**CONFIDENTIAL ATTORNEY/CLIENT PRIVILEDGED MAIL**

In re: *State of Kansas v. Jason W. Hachmeister*
Shawnee County District Court Case No. **11CR2178, 12CR471**
Appellate Court Case No. **15-114,796-S, 14-112,260-A**

Mr. Hachmeister:

This will acknowledge the receipt of your letter of May 27, 2021. I do not, and did not, represent you in Shawnee County case No. 2018-CV-129. Any mail inadvertently received by this office in that case would have been returned or shredded. I do not have a file in that case number.

As I advised you in my letter of March 21, 2019, any further questions should be addressed to your most recently appointed counsel, not to this office.

Very truly yours,

Jerry Wells

Jerry Wells

JW/rk