FILED
U.S. District Court
District of Kansas
02/03/2026
Clerk, U.S. District Court
By:\_\_JAL\_\_ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JASON WAYNE HACHMEISTER,

Petitioner,

v.                                              CASE NO. 25-3111-JWL

THOMAS WILLIAMS,

Respondent.

**MEMORANDUM AND ORDER**

This matter is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner and Kansas state prisoner Jason Wayne Hachmeister. The operative petition is the amended petition filed on July 25, 2025. (Doc. 10.) This matter comes now before the Court on Petitioner's "Motion Regarding Timeliness and Exhaustion" (Doc. 8) and the exhibits in support (Doc. 16); Respondent's limited Pre-Answer response ("PAR") (Doc. 13), in which he asserts the affirmative defense of timeliness; Petitioner's reply to the PAR (Doc. 17); and the exhibits Petitioner submitted in support of his reply (Doc. 20). For the reasons explained below, this matter will be dismissed as untimely filed.

**Background**[1]

In 2013, a jury in Shawnee County convicted Petitioner of 105 counts of sexual exploitation of a child. (Doc. 10, p. 1); *State v. Hachmeister*, 2015 WL 8175905, *1 (Kan. Ct. App. Dec. 4, 2015) (unpublished) (*Hachmeister I*), aff'd by *State v. Hachmeister*, 306 Kan. 630, 630 (2017)

---

[1] The history of Petitioner's litigation in the state courts is complicated and Petitioner is assured that the Court has carefully considered all of his factual allegations. The background information set forth in this order is not intended to recite every detail of the state-court litigation. Rather, it simply establishes the general context of the parties' arguments.

1

(*Hachmeister II*). The Shawnee County District Court sentenced him to a total of 86 months in prison. (Doc. 10, p. 1); *Hachmeister II*, 306 Kan. at 631. Petitioner pursued a direct appeal, but on December 4, 2015, the Kansas Court of Appeals ("KCOA") affirmed. *See Hachmeister I*, 2015 WL 8175905, at *1. The Kansas Supreme Court ("KSC") granted in part Petitioner's petition for review of the KCOA's opinion, but in an opinion issued on June 16, 2017, it affirmed the KCOA's decision. *Hachmeister II*, 306 Kan. at 630. Petitioner advises that he did not file a petition for writ of certiorari in the United States Supreme Court. (Doc. 10, p. 3.)

On January 19, 2018, Petitioner filed in Shawnee County District Court a motion seeking state habeas relief under K.S.A. 60-1507, which began what this Court will refer to as "the 60-1507 case."[2] *Id.* On December 31, 2018, the district court issued a memorandum decision and order ("the 2018 MD&O") that summarily denied the K.S.A. 60-1507 motion. Unfortunately, the 2018 MD&O was mistakenly filed in the underlying criminal case instead of the 60-1507 case. (*See* Doc. 20, p. 1); *see also* Case No. 2012-CR-000471, MD&O filed May 14, 2021, p. 2 (acknowledging misfiling). Nevertheless, Petitioner received a copy of the 2018 MD&O and, on January 25, 2019, he filed in the 60-1507 case a motion to reconsider the denial of relief. (Doc. 8, p. 1.)

On March 20, 2019, the Shawnee County District Court entered a minute order in the criminal case acknowledging that the 2018 MD&O had been filed therein by mistake and should be disregarded. *See* Case. No. 2012-CR-000471. On March 21, 2019, it entered a MD&O ("the 2019 MD&O") in the 60-1507 case, finding that the K.S.A. 60-1507 petition had been timely filed[3]

---

[2] In order to determine the procedural history of Petitioner's journey through the state courts, this Court has reviewed and considered the publicly available online records of Petitioner's criminal case (Case No. 2012-CR-000471) and the 60-1507 case (Case No. 2018-CV-000129) in the Shawnee County District Court, which are available as of the date of this order through the search engine located at https://casesearch.kscourts.gov. In this order, the Court will cite these records by case number.

[3] In his Pre-Answer Response, Respondent asserts that the "district court denied Petitioner's K.S.A. 60-1507 motion as untimely." (Doc. 13, p. 2.) As Petitioner points out in his reply to the Pre-Answer Response, however, the state

but that the petition, files, and records demonstrated that Petitioner was not entitled to relief. (Doc. 13-2, p. 1-8.) The 2019 MD&O did not acknowledge the misfiling of the 2018 MD&O or Petitioner's motion to reconsider the 2018 MD&O. *Id.*

In August 2019, the Shawnee County District Court received from Petitioner a written inquiry that, in part, requested an "R.O.A."—or Register of Actions—"because [Petitioner had] not heard anything about the status of the Motion to Reconsider since January." (Doc. 15, p. 8.) An R.O.A. was mailed to Petitioner on August 27, 2019. *See* Case No. 2018-CV-000129. In a letter the state district court received on June 22, 2020, Petitioner requested a copy of the 2019 MD&O, explaining that he was unable to determine whether his K.S.A. 60-1507 motion had been granted or denied and asserting that he had never received a copy of the 2019 MD&O. *Id.* A copy of the 2019 MD&O was mailed to Petitioner on June 23, 2020. *Id.*

Petitioner received the 2019 MD&O a week later, but on February 22, 2021, the Shawnee County District Court received from Petitioner a letter stating that although he had "sent a Notice of Appeal in early July[] 2020," he had not heard anything about the status of the appeal. Petitioner also asserted that the Arizona prison where he was incarcerated "was known for 'losing' a lot of legal mail for a bunch of the Kansas inmates" and he "personally had multiple letters to [his] attorney in another case that he never received." *Id.* Petitioner requested another copy of the R.O.A., which the docket reflects was mailed to him on February 24, 2021 along with a notice informing him that the Court had not received a notice of appeal for the 60-1507 case.

On April 5, 2021, the Shawnee County District Court received from Petitioner a document titled "2nd Notice of Appeal." Attached as an exhibit to this document was a copy of the first notice of appeal that Petitioner stated he had placed into prison mail on July 9, 2020. *See* Case No.

---

district court clearly held the opposite. (Doc. 17, p. 1.) The 2019 MD&O expressly states: "Petitioner's request for habeas corpus relief is timely." (Doc. 13-2, p. 4.)

3

2018-CV-000129. The first notice of appeal purported to "appeal[] the district court's order and all adverse rulings," including the order denying his 60-1507 motion and "the denial [of] the timely filed motion to Reconsider the denial of case [number] 2018-CV-000129 . . . ." *Id.* On April 9, 2021, the State filed a motion to dismiss the notice of appeal, arguing that it was untimely filed. Petitioner filed a response to the motion and, on May 14, 2021, the Shawnee County District Court granted the States's motion and dismissed the notice of appeal. *Id.*

More than 2 years later, on September 11, 2023, the Shawnee County District Court received from Petitioner a "Motion For Findings Of Facts And Conclusions Of Law On All Issues Raised In 18-CV-129." *Id.* This motion will be discussed in greater detail below. For now, it is sufficient to note that as of the date of this order, the state court docket does not reflect that the motion has been ruled upon.

On May 29, 2025[4], Petitioner filed the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 that began this federal habeas case. (Doc. 1.) On June 30, 2025, the Court issued an order directing Respondent to file a Pre-Answer Response ("PAR") limited to addressing the affirmative defense of timeliness under 28 U.S.C. § 2244(d). (Doc. 5.) Petitioner then filed a "preemptive" and unsolicited "Motion Regarding Timeliness and Exhaustion" that contained arguments regarding timeliness. (Doc. 8.) Shortly thereafter, he filed the currently operative amended petition for writ of habeas corpus. (Doc. 10.)

Respondent obtained an extension of time for filing the PAR (Docs. 11 and 12) and, on September 19, 2025, he timely filed the PAR. (Doc. 13.) The Court then issued an order granting

---

[4] The Court received the petition on June 5, 2025. (Doc. 1.) "Because [Petitioner] was a prisoner and filed his motion pro se, he may rely on the 'prison mailbox rule,' which makes the date on which he presented his motion to prison officials for mailing the filing date for timeliness purposes." *United States v. Hopkins*, 920 F.3d 690, 696 n. 8 (10th Cir. 2019). The petition declares that Petitioner placed it in the prison mailing system on May 29, 2025, so under the prison mailbox rule, the Court considers the petition filed on May 29, 2025.

4

Petitioner time in which to file a reply to the PAR. (Doc. 14.) Petitioner timely filed his reply on October 24, 2025. (Doc. 17.) The Court reviewed the parties' briefing and determined that it required additional state-court records to resolve whether this matter was timely filed. Therefore, on November 6, 2025, the Court directed Respondent to provide certain state-court records. (Doc. 19.) Respondent completed submission of the records on December 15, 2025. (Doc. 23.)

## Analysis

The Court has reviewed the parties' briefing on timeliness, including Petitioner's "Motion Regarding Timeliness and Exhaustion" (Doc. 8); the portion of the operative petition addressing timeliness (Doc. 10, p. 13); the PAR (Doc. 13) and exhibits thereto; the additional argument Petitioner filed in support of his motion regarding timeliness (Doc. 16); Petitioner's reply to the PAR (Doc. 17); and the exhibits filed in support of that reply (Doc. 20). Although not every argument will be addressed in detail in this order, the parties are assured that the Court has carefully considered each point asserted before reaching any conclusions about the timeliness of this matter.

This action is subject to the one-year limitation period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in 28 U.S.C. § 2244(d). Section 2244(d)(1) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to case on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The one-year limitation period generally runs from the date the judgment becomes "final," as provided by § 2244(d)(1)(A). *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000). Nothing in the case now before the Court suggests that another subsection of the statute applies to control the date on which the one-year limitation period began. The United States Supreme Court has held that direct review concludes—making a judgment "final"—when an individual has exhausted his or her opportunity for direct appeal to the state courts and his or her opportunity to request review by the United States Supreme Court. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).

In this matter, the KSC issued its opinion in Petitioner's direct appeal on June 16, 2017. Petitioner advises that he did not file a petition for writ of certiorari. The Tenth Circuit has explained that "if a prisoner does not file a petition for writ of certiorari with the United States Supreme Court after [his or her] direct appeal, the one-year limitation period begins to run when the time for filing a certiorari petition expires." *United States v. Hurst*, 322 F.3d 1256, 1259 (10th Cir. 2003). The Rules of the Supreme Court of the United States allow petitioners 90 days from the date of entry of judgment in highest state court to seek certiorari. Sup. Ct. R. 13(1).

The last day on which Petitioner could have timely filed a petition for writ of certiorari was September 14, 2017. Petitioner did not file a petition for writ of certiorari, so on September 15, 2017, the one-year AEDPA limitation period began to run. Under the "anniversary method" used in the Tenth Circuit, the one-year federal habeas limitation period expired at the end the day on September 15, 2018. *See United States v. Hurst*, 322 F.3d 1256, 1261-62 (10th Cir. 2003). Yet Petitioner did not file his § 2254 petition until May 29, 2025. (*See* Doc. 1, p. 14.)

*Statutory Tolling*

The federal habeas statute of limitations set forth in the AEDPA includes a tolling provision that states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Under this provision, the one-year federal habeas limitation period was tolled, or paused, when Petitioner filed his K.S.A. 60-1507 motion on January 19, 2018. The Tenth Circuit has explained that when this type of statutory tolling applies, the number of days that the relevant state-court matter is pending "is added to the one-year anniversary date to establish the final deadline for filing a § 2254 application in federal court." *Stuart v. Utah*, 449 Fed. Appx. 736, 738 (10th Cir. Nov. 30, 2011) (unpublished) (citing *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011)).

Thus, this Court must determine the number of days the 60-1507 case was pending. Generally speaking, determining the length of time a 60-1507 motion is "pending" is a straightforward task. The motion is pending from the date on which it is filed in state district court through the date on which either appellate review is complete or the opportunity to seek appellate review has expired. *See Richmond v. Schnurr*, 2024 WL 3826130, *5 (D. Kan. Aug. 14, 2024) (unpublished) (explaining that the last day a K.S.A. 60-1507 motion is pending is usually "the date on which the KSC denied relief or, if no petition for review was filed, this Court takes the date on which the KCOA denied relief and adds 30 days to account for the period in which the petitioner could have filed a petition for review"); *Kane v. Williams*, 2025 WL 3003743, *3 (D. Kan. Oct. 27, 2025) (unpublished) (finding 60-1507 motion pending for approximately 1,268 days from March 5, 2021—when it was filed in state district court—until August 23, 2024—when the KSC denied review of the KCOA's decision in the related appeal).

7

In the case currently before the Court, however, the finality of the 60-1507 case is a point of contention. Highly summarized, Petitioner argues that the 60-1507 case remains pending to this day because the (1) 2019 MD&O did not address all of the issues in Petitioner's 60-1507 motion; (2) the state district court did not certify an interlocutory appeal from the 2019 MD&O; and (3) the state district court never ruled on either Petitioner's motion to reconsider the 2018 MD&O or his September 2023 motion for additional findings of fact and conclusions of law in the 2019 MD&O. (Doc. 10, p. 13; Doc. 16, p. 2-10; Doc. 18, p. 1-5.) Respondent argues that the 60-1507 case became final on April 20, 2019, after "[t]he time in which Petitioner could have filed an appeal [from the 2019 MD&O] expired." (Doc. 13, p. 2.) Respondent also disputes Petitioner's contentions that the 60-1507 case never became final, which will be discussed in more detail later in this order. *Id.* at 5.

### *The Mandamus Proceedings*

As an initial matter, the Court will address the impact of original actions in mandamus that Petitioner pursued in the Kansas Supreme Court. Part of Petitioner's argument is that the 2019 MD&O was "not a final appealable order" and that his efforts to obtain a final, appealable order in the 60-1507 case have been unsuccessful. (*See* Doc. 10, p. 6, 8-9.) To demonstrate his efforts, Petitioner asserts in the amended petition that he "tried to get the Kansas Supreme Court to notice [the lack of an appealable order in the 60-1507 case] with a writ of Mandamus, but they refused to do anything (in 2024)." *Id.* at 6. In his reply to the PAR, Petitioner similarly states that in 2023, he "filed a Writ of Mandamus in the Kansas Supreme Court asking them to make the district court comply with [Kansas Supreme Court Rule] 183(j)" by making additional findings of fact and conclusions of law. (Doc. 17, p. 2.) He states that the petition was denied on October 3, 2024 and it was "either Case [number] 127,860 or Case [number] 127,861." *Id.*

The procedural history of Petitioner's efforts to obtain state habeas relief under K.S.A. 60-1507 is complex. After the Court ordered and received briefing on timeliness, it determined that "[t]o resolve the question of timeliness, which could be dispositive in this case, the Court requires further information contained in state-court records that are not currently before this Court and are not available through the Kansas courts' Public Access Portals." (Doc. 19, p. 5.) Thus, in a memorandum and order issued on November 6, 2025, the Court directed Respondent to submit, among other records and to the extent possible, "the records of and documents filed in any related original mandamus action Petitioner pursued in the Kansas Supreme Court." *Id.*

When Respondent's initial submission of records failed to include any records or documents related to mandamus proceedings and also failed to explain why none had been submitted, the Court issued a second order that directed Respondent to file a written response explaining what attempts had been made to obtain the requested mandamus records. (Doc. 22, p. 2.) Respondent asserted that because the petition did not provide specific case numbers, specific dates, or case captions[5] and the records were not available through "[o]nline searches of available databases and portals," he had "not uncover[ed] them." (Doc. 23, p. 1.) After the Court's second order regarding the records, however, Respondent contacted the Clerk of the Kansas Appellate Courts and obtained the records. *Id.*

The Court has carefully reviewed the records of the original actions in mandamus. (Docs. 23-1 and 23-2.) This review reveals that case number 127,861 was the mandamus proceeding related to this case. (*See* Doc. 23-2, p. 1 (captioned "For the Writ of Mandamus sent Regarding Case [number] 12-CR-471") and Doc. 10, p. 1 (stating that this federal habeas matter challenges

---

[5] The Court notes that the operative amended petition clearly states that the mandamus proceedings were in 2024. (Doc. 10, p. 6.) In addition, Petitioner's November 17, 2025 reply to Respondent's briefing on timeliness—which was filed prior to the Court's order for the mandamus records—contained the mandamus proceedings' case numbers. (Doc. 17, p. 2.)

9

the judgment in case number 2012-CR-471).) The records submitted by Respondent have further allowed this Court to determine that on September 18, 2023, Petitioner filed in Shawnee County District Court—in case number 2012-CR-471—an "Expedited Petition for Writ of Mandamus," which is available through the online records database located at https://casesearch.kscourts.gov.

The Court has reviewed both the records submitted by Respondent and the mandamus petition Petitioner filed in the state district court in September 2023. It has found no request in those records that the Kansas Supreme Court order the state district court to issue a more detailed order in the 60-1507 case. Instead, the records reflect that the mandamus actions focused on the alleged invalidity of search warrants and other defects in the underlying criminal case. The first page of the petition for writ of mandamus filed in the criminal case expressly states:

> This Writ of Mandamus will state a few different issues (1) The district court lacked subject matter jurisdiction from the very beginning (2) The search warrants that were issued were general warrants, and as a matter of federal constitutional law, a state court must exclude evidence obtained in violation of a defendant's Fourth and Fourteenth Amendment rights. By allowing such evidence, the court has committed constitutional error and I have been placed in custody in violation of the U.S. Constitution. (3) I explicitly requested to represent myself and this right was denied.

Similarly, the relief Petitioner sought in the mandamus petition and action was "to order the district court to annul the search warrant, the search and seizure pursuant to the search warrant, to find there are no 'facts' to show a crime, to find the district court then had no jurisdiction, that the conviction was void and must be vacated, to dismiss the charge with prejudice (because no 'facts' to show a crime)[,] and to order my immediate release."); Doc. 23-2, p. 14 (same).) To be sure, Petitioner noted in the petition for writ of mandamus filed in the criminal case that he "argued . . . numerous . . . issues related to the unconstitutionality of the warrants in the 60-1507 [and t]he court did not address these issues at all." Case No. 2012-CR-000471, Petition filed Sept. 18, 2023, p. 2. Other than this brief reference, however, there is nothing in the petition for writ of mandamus

10

or the records from the original mandamus action that indicates Petitioner sought to compel the state district court to take additional action in the 60-1507 case.

Simply put, the Court is not persuaded that either the mandamus petition filed in the related criminal case or the original action in mandamus was intended to seek action in the 60-1507 case. Thus, they do not affect the Court's analysis of the length of time the 60-1507 case was pending. The Court will not discuss Petitioner's mandamus efforts further in this order.

### *The effect of the 2018 MD&O and the Motion to Reconsider*

The Court next turns to the impact of the 2018 MD&O and Petitioner's motion to reconsider the 2018 MD&O. This is important because Petitioner argues, in part, that the 60-1507 case is not yet final because his motion to reconsider the 2018 MD&O remains pending in the 60-1507 case. For the reasons explained below, the Court concludes that neither the 2018 MD&O nor Petitioner's motion to reconsider the 2018 MD&O affected the finality of the 60-1507 case or the length of time the 60-1507 case was pending.

Under Kansas law, "[a] habeas corpus action [under K.S.A. 60-1507] is an independent and original civil proceeding and is terminated by the district court's order either granting or denying relief to the movant." *Moll v. State*, 41 Kan. App. 2d 677, Syl. ¶ 1 (2009), *rev denied* Mar. 31, 2010; *see also State v. LaPointe*, 305 Kan. 938, 953 (2017) ("[A] K.S.A. 60-1507 motion 'is an independent civil action that must be docketed separately' and ' . . . is governed by the rules of civil procedure . . . .'"). As the Kansas Court of Appeals has recognized, there appears to be "no rule of law in Kansas that allows a judge to rule on a civil motion in an ended criminal case." *Hickson v. State*, 39 Kan. App. 2d 678, 680 (2008). Although the 2018 MD&O purported to deny relief in the 60-1507 case, it was filed in the related criminal case only. Because there is no legal authority in Kansas allowing a judge to deny a civil 60-1507 motion by way of an order entered in

11

a criminal case, the 2018 MD&O had no effect on the 60-1507 case.

Next, the Court turns to Petitioner's January 2019 motion to reconsider, which sought reconsideration of the 2018 MD&O. As a reminder, at the time Petitioner filed in the 60-1507 case the motion to reconsider the 2018 MD&O, no dispositive order had been filed in the 60-1507 case. In other words, the motion to reconsider was directed at the 2018 MD&O, which had been filed only in the criminal case.

Neither party has provided nor has this Court's independent research revealed a controlling Kansas case on the effect of a premature motion to reconsider filed in a civil case. Under the logic in *Hickson*, however, it follows that a judge may not rule in a civil case on a motion to reconsider that challenges an order filed only in a separate criminal case. In other words, Petitioner procedurally could not seek reconsideration of the 2018 MD&O—misfiled in the criminal case—by filing in the 60-1507 case a motion to reconsider. A motion to reconsider must be filed in the same case as the order it asks the court to reconsider.

Because filing a motion to reconsider in the 60-1507 case was not a proper way to seek reconsideration of the 2018 MD&O filed in the criminal case, the Court concludes that the motion to reconsider does not affect the date on which the 60-1507 case became final for purposes of the federal habeas statute of limitations. Moreover, contrary to Petitioner's assertion to this Court, the 2019 MD&O—which *was* filed in the 60-1507—was similar but *not* identical to the 2018 MD&O. Simply put, Petitioner never filed a motion to reconsider the only order that properly denied K.S.A. 60-1507 relief: the 2019 MD&O. It would be less confusing for the state district court to dispose of the motion to reconsider that remains pending in the 60-1507 case. But under the unique procedural history of this case, the fact that the motion remains pending does not mean that the 60-1507 case is not final.

### *The 2019 MD&O, Kansas Supreme Court Rule 183(j), and K.S.A. 60-254*

Addressing Petitioner's next argument requires a closer look at Kansas Supreme Court Rules and statutes. Rule 183 of the Rules of the Supreme Court of Kansas sets forth procedures for actions brought under K.S.A. 60-1507. Kan. S. Ct. R. 183. Subsection (j) of Rule 183 states: "The court must make findings of fact and conclusions of law on all issues presented." Similarly, K.S.A. 60-252 provides:

> (a) *Findings and conclusions.* (1) *In general.* In an action tried on the facts without a jury or with an advisory jury or upon entering summary judgment, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of evidence, or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under K.S.A. 60-258, and amendments thereto.

Finally, K.S.A. 60-254 states, in relevant part:

> (a) *Definition.* A judgment is the final determination of the parties' rights in an action.
>
> (b) *Judgment on multiple claims or involving multiple parties.* When an action presents more than one claim for relief, whether as a claim, counterclaim, crossclaim or third-party claim, or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

As the Kansas Court of Appeals has explained:

> A K.S.A. 60-1507 proceeding is a civil action. Under K.S.A. 2017 Supp. 60-2102(a)(4), the appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from a *final decision* in any action, except in an action where a direct appeal to our Supreme Court is required by law. "A 'final decision' generally disposes of the entire merits of the case and leaves no further questions or the possibility of future directions or actions by the court." *In re T.S.W.*, 294 Kan. 423, 433, 276 P.3d 133 (2012).

*Ponds v. State*, 56 Kan. App. 2d 743, 746 (2019).

Petitioner argues to this Court that because the 2019 MD&O did not address and adjudicate all of the arguments in his 60-1507 motion, the state district court would have needed to certify any appeal from the 2019 MD&O under K.S.A. 60-254(b), which it did not. Thus, Petitioner contends, he was left without a final, appealable order, meaning that the 60-1507 case remains pending to this day. Petitioner also asserts that the 2019 MD&O did not comply with Rule 183(j) because it did not individually address and adjudicate each claim in his 60-1507 motion. He contends that this failure meant that the 2019 MD&O was not a final, appealable order. (*See* Doc. 10, p. 13; Doc. 16, p. 2; Doc. 17, p. 4.)

The 2019 MD&O is not a model of clarity. However, it recognized that "Petitioner raise[d] multiple arguments in his 153-page" 60-1507 motion. (Doc. 13-2, p. 5.) The 2019 MD&O separated the arguments into "two categories:  (1) the child pornography discovered pursuant to the search warrants should have been suppressed; and (2) trial counsel was ineffective." *Id.* It found that Petitioner made "only conclusory contentions," "fail[ed] to state an evidentiary basis in support of his claims," and "fail[ed] to identify an evidentiary basis for relief from the record." *Id.* After explaining some of its reasoning more specifically, *see id.* at 5-8, the 2019 MD&O concluded:  "After a review of the Petition and the files and records in this case, the Court DENIES Petitioner's Writ of Habeas Corpus. This Memorandum Decision and Order shall constitute the Court's entry of judgment when filed with the Clerk of this Court. No further journal entry is required." *Id.* at 8 (emphasis in original).

This language makes clear that the 2019 MD&O was intended to dispose of all of the claims in the 60-1507 case. In other words, it was a "final decision" as contemplated under K.S.A. 60-2102(a)(4) and as further defined in *Ponds*. Thus, this Court rejects Petitioner's argument that the 2019 MD&O was unappealable because there was no K.S.A. 60-254(b) certification. Simply put,

no such certification was required because the 2019 MD&O was a final order that disposed of all claims and made clear that the district court did not anticipate taking further action in the case.

Next, even if the Court accepts as true Petitioner's contention that the 2019 MD&O failed to comply with Kansas Supreme Court Rule 183(j), the Court rejects Petitioner's assertion that this failure means that the 2019 MD&O was not a final, appealable order. Petitioner provides no persuasive legal authority that supports the premise that the failure to comply with Rule 183(j) renders an order non-final or unappealable as a matter of law.[6] At best, a Rule 183(j) failure triggers the aggrieved party's responsibility to object to the insufficiency of the order, whether through an objection or through a motion to reconsider. *See Gilkey v. State*, 31 Kan. App. 2d 77, 77 (2003) (quoting *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 706 (1998), for the holding that "'[a] litigant must object to inadequate findings of fact and conclusions of law in order to give the trial court an opportunity to correct them. In the absence of an objection, omissions in findings will not be considered on appeal. When there has been no such objection, the trial court is presumed to have found all facts necessary to support the judgment.'").

The Court notes that Petitioner filed a Rule 183(j) objection to the 2019 MD&O and sought, via motion, additional findings of fact and conclusions of law. But he did not do so until September 2023. Because the motion was filed more than 4 years after the MD&O to which it was directed was filed and judgment was entered, it was not timely. *See Phillips v. State*, 2016 WL 3570487, *2 (Kan. Ct. App. July 1, 2016) (unpublished) (holding that motion to reconsider dispositive ruling

---

[6] As the Kansas Supreme Court has long held, "[t]he purpose of [Rule 183(j)'s] requirement is to assist the appellate court in conducting meaningful review." *Breedlove v. State*, 310 Kan. 56, 60 (2019) (citing *State v. Moncla*, 269 Kan. 61, 65 (2000)). "[T]he relevant inquiry is whether [the Kansas appellate court] can conduct meaningful review." *Id.* at 60 (citing *Robertson v. State*, 288 Kan. 217, 232-33 (2009)). If the Kansas appellate court is able to conduct meaningful appellate review of the issues on appeal, a violation of Rule 183(j) does not require a remand for additional findings of fact and conclusions of law. And where, as occurred here, a Kansas district court summarily denies a K.S.A. 60-1507 motion without a hearing, the Kansas appellate courts "have the same access to the motion, records, and files as the district court." *See Sherwood v. State*, 310 Kan. 93, 99 (2019). Thus, Petitioner's argument that a Rule 183(j) failure somehow legally prevented his appealing the 2019 MD&O is not persuasive.

as "insufficient under Rule 183(j)" filed "nearly 11 months after the district court entered its initial order" was untimely because it "must be filed no later than 28 days after the entry of the judgment"), *rev. denied* June 5, 2017. Thus, it did not affect the finality of the 2019 MD&O. *See also* K.S.A. 60-2103(a) (noting that "a *timely* motion . . . to amend or make additional findings of fact" terminates the running of the time for appeal (emphasis added)).

To summarize, the 2019 MD&O, which was filed on March 21, 2019, was a final order that denied relief in the 60-1507 case. Under K.S.A. 60-2103(a), Petitioner had "30 days from the entry of the judgment" in which to file a notice of appeal. He did not do so. Nor did he file a timely motion to reconsider the 2019 MD&O or any other motion which would have stopped the running of the time for appeal. *See* K.S.A. 60-2103(a). Thus, on April 22, 2019[7], the time to appeal the 2019 MD&O expired and the 60-1507 case became final. Neither Petitioner's subsequent filing of notices of appeal, his motion for additional findings of fact and conclusions of law, nor his petitions for mandamus relief alter the finality of the 2019 MD&O.

As explained above and in the Court's previous orders, the one-year federal habeas limitation period began to run on September 15, 2017, after Petitioner's direct appeal became final. Under the "anniversary method" used in the Tenth Circuit, it expired at the end the day on September 15, 2018.[8] *See Hurst*, 322 F.3d at 1261-62. Application of the AEDPA's statutory tolling provision, 28 U.S.C. § 2244(d)(2), however, results in the tolling of the one-year AEDPA federal habeas limitation period for approximately 459 days—from January 19, 2018, when Petitioner filed his K.S.A. 60-1507 motion, until the end of April 22, 2019, when the time to appeal

---

[7] Respondent asserts in the PAR that the time to appeal the 2019 MD&O expired on April 20, 2019. (Doc. 13, p. 2.) But April 20, 2019 was a Saturday. Under K.S.A. 60-206(a)(1), "if the last day [of the period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday." Thus, the time in which to file a notice of appeal did not expire until the end of Monday, April 22, 2019.
[8] Because September 15, 2018 was a Saturday, Petitioner could have timely filed his 28 U.S.C. § 2254 petition at any point through the end of Monday, September 17, 2018. *See Stuart*, 449 Fed. Appx. at 738 (citing *Harris*, 642 F.3d at 906 n. 6).

16

the final order denying relief in the 60-1507 case expired.

The Tenth Circuit has explained that to account for statutory tolling of the federal habeas limitation period, the number of days that the relevant state-court matter is pending "is added to the one-year anniversary date to establish the final deadline for filing a § 2254 application in federal court." *Stuart*, 449 Fed. Appx. at 738 (citing *Harris*, 642 F.3d at 906 n.6). When the 459 days the 60-1507 case was pending are added to the original one-year anniversary date, it gives the new filing deadline for this matter: December 18, 2019. Petitioner did not file his 28 U.S.C. § 2254 petition until May 2025. (Doc. 1.) Thus, the petition was not timely filed.

*Equitable Tolling*

In addition to statutory tolling, the one-year federal habeas limitation period is subject to equitable tolling "'in rare and exceptional circumstances.'" *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (citation omitted). Equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (citations omitted). Circumstances that warrant equitable tolling include, "for example, when a prisoner is actually innocent, when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a deficient pleading during the statutory period." *Gibson*, 232 F.3d at 808 (internal citations omitted).

In the PAR, Respondent argues that Petitioner has not shown that he is entitled to equitable tolling of the federal habeas statute of limitations. (Doc. 13, p. 4-5.) Petitioner, on the other hand, argues that equitable tolling is justified. (Doc. 17, p. 5.) He contends that he has worked to obtain a final, appealable order from the state district court "that addresses all issues on the merits" and

he has been prevented from advancing by the conduct of the district court and the State. *Id.* (emphasis in original). As explained above, Petitioner's asserted belief that the 2019 MD&O was not an appealable order is not supported by the relevant law. "It is well-established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Marsh*, 223 F.3d at 1220. Petitioner has failed to persuasively argue for equitable tolling.

*Fundamental Miscarriage of Justice Exception*

As explained in the Court's previous orders, there is an exception to the federal habeas statute of limitations where the failure to consider the merits of the underlying grounds for federal habeas relief will result in a fundamental miscarriage of justice because the petitioner is actually innocent. (Doc. 14, p. 2.) "[A]ctual innocence 'serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations.'" *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)). "Actual innocence means 'factual innocence not mere legal insufficiency.'" *O'Bryant v. Oklahoma*, 568 Fed. Appx. 632, 637 (10th Cir. 2014) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

Even liberally construing the voluminous pro se filings submitted in this case, Petitioner has not sufficiently asserted that he should be allowed through the actual innocence gateway, nor has he presented this Court with any new evidence that would make it more likely than not that any reasonable juror would have reasonable doubt about his guilt. *See Fontenot*, 4 F.4th at 1030 (stating standard for entitlement to actual innocence exception). Thus, the actual innocence exception does not allow Petitioner to proceed on his untimely petition for federal habeas relief.

## Conclusion

The Court finds that the last day on which Petitioner could have timely filed a 28 U.S.C. §

2254 petition was in December 2019, but he did not file his § 2254 petition until 2025. Moreover, Petitioner has not shown that the federal habeas statute of limitations should be equitably tolled or that he should be allowed to proceed on his untimely petition by way of the actual innocence gateway. Therefore, this matter must be dismissed as time-barred.

### Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability (COA) upon entering a final adverse order. A COA may issue only if the petitioner made a substantial showing of the denial of a constitutional rights. 28 U.S.C. § 2253(c)(2).

> "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485. The Court concludes that the procedural ruling in this matter is not subject to debate among jurists of reason. Therefore, the Court declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED THAT** this matter is dismissed with prejudice as time-barred. No certificate of appealability will issue.

**IT IS SO ORDERED.**

DATED:   This 3rd day of February, 2026, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge